1

2

3

4

5

6

7                          IN THE UNITED STATES DISTRICT COURT

8                        FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

11

CHANDRA CRANE; GLADYS HEUSDENS;      )
12  DUKE FACILITIES, INC.; BNCC, INC.   )    2:07-cv-01639-GEB-JFM
    D/B/A BLYTHE NURSING CARE CENTER    )
13  SUING ON BEHALF OF THEMSELVES AND   )
    ALL OTHERS SIMILARLY SITUATED; AND  )
14  CALIFORNIA ASSOCIATION OF HEALTH    )
    FACILITIES, SUING ON ITS OWN BEHALF )
15  AND ON BEHALF OF ITS MEMBERS,       )
                                        )
16                      Plaintiffs,     )
                                        )
17       v.                             )    ORDER[*]
                                        )
18  SANDRA SHEWRY, DIRECTOR OF THE      )
    STATE DEPARTMENT OF HEALTH CARE     )
19  SERVICES, STATE OF CALIFORNIA; JOHN )
    CHIANG, STATE CONTROLLER, STATE OF  )
20  CALIFORNIA,                         )
                                        )
21                      Defendants.     )
    _____)

22

23          Plaintiffs applied for a temporary restraining order ("TRO")

24  on August 15, 2007.  Plaintiffs are Duke Facilities, Inc. ("Duke"), an

25  immediate care facility for the mentally retarded; BNCC, Inc., d/b/a

26  Blythe Nursing Care Center ("Blythe"), a skilled nursing facility;

27  _____

28       [*]     This matter was determined to be suitable for decision without
    oral argument.  L.R. 78-230(h).

Dockets.Justia.com

Chandra Crane ("Crane"), a resident at Duke; Gladys Heusdens
("Heusdens"), a resident at Blythe; and the California Association of
Health Facilities.

BACKGROUND

The federal Medicaid program allows states to create medical
assistance plans that are jointly funded by the federal government and
state.  The state plan must comply with federal law in order to
receive federal funding.  In California, the state plan is called
Medi-Cal.  It is administered by the State Department of Health Care
Services ("HCS").  A facility that provides medical assistance to an
eligible Medi-Cal beneficiary may submit a claim for reimbursement to
HCS, which in turn reimburses the provider.

Plaintiffs Duke and Blythe provide medical services to
eligible Medi-Cal beneficiaries, including Crane and Heusdens.  Both
Duke and Blythe are long-term care facilities, which are considered
institutional providers (as opposed to individual practitioners, group
practitioners, or a shared health facility).  See 42 C.F.R. §
447.45(b); Opp'n at 7:19-26.

Although California law requires that the state budget be
enacted by June 15, 2007, the state legislature failed to enact a
budget until August 21, 2007.[1]  During this delay, HCS was without
formally appropriated funding.  HCS continued to reimburse Medi-Cal
providers with $2 billion in emergency funding that had been set aside
in case of a budget delay.  This emergency funding was soon depleted.
Beginning July 14, 2007, HCS ceased reimbursements to certain Medi-Cal

---

[1]    At the time Plaintiffs applied for a TRO, the budget had not
yet been passed.

providers because the new state budget had not been enacted.  A new state budget was enacted on August 21, 2007.[2]

Duke and Blythe argue that they depend on Medi-Cal reimbursements to remain in business.  (Mot. at 4:1-15; 5:14-20.) They argue that without the Medi-Cal reimbursements from HCS, they will be unable to meet financial obligations such as paying staff and utility bills.  (Mot. at 12:28 - 13:21.)  If unable to meet financial obligations, Duke and Blythe argue they will be forced to close, and beneficiaries (including Crane and Heusdens) will be forced to re-locate to a new facility.  (Id.)

On August 15, 2007, Plaintiffs applied for a TRO to force HCS to resume making Medi-Cal payments to Plaintiffs and other institutional providers of medical services.  (Mot. at 35:3-4.) Plaintiffs claim that Defendants failed to comply with federal Medicaid law when HCS stopped reimbursements on July 14, 2007. Further, Plaintiffs claim that Defendants' failure to reimburse institutional providers under Medi-Cal violates the Contracts Clause and the Takings Clause of the U.S. Constitution.

For the reasons that follow, the application is denied.

DISCUSSION

I. LEGAL STANDARD

To obtain a TRO, Plaintiffs must demonstrate "either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor."  A & M Records, Inc. v.

---

[2]    See Judy Lin, "Lawmakers break budget gridlock," Sacramento Bee, Aug. 21, 2007, available at http://www.sacbee.com/749/story/337058.html.

Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id. Plaintiffs must show "as an irreducible minimum that [they have] a fair chance of success on the merits." Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995).

## II.  Probable Success on the Merits

Plaintiffs first argue that federal Medicaid law, 42 U.S.C. § 1396a(8), requires HCS to reimburse Medi-Cal providers with "reasonable promptness."  (Mot. at 19:11-14.)  In full, section 1396a(8) requires that a state medical assistance plan must "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."  However, this section is inapplicable because it addresses providing services to individual beneficiaries, not to HCS reimbursing claims submitted by providers.

In contrast, 42 C.F.R. § 447.45(d) clearly states an explicit time requirement for the state agency to reimburse provider claims.

> (2) The agency must pay 90 percent of all clean
> claims from practitioners, who are in individual
> or group practice or who practice in shared health
> facilities, within 30 days of the date of receipt.
> (3) The agency must pay 99 percent of all clean
> claims from practitioners, who are in individual
> or group practice or who practice in shared health
> facilities, within 90 days of the date of receipt.
> (4) The agency must pay all other claims within 12
> months of the date of receipt . . . .

42 C.F.R. § 447.45(d); see 42 U.S.C. § 1396a(37).  So long as the state meets these deadlines, federal Medicaid law is not violated. Dowling v. Davis, 19 F.3d 445, 447 (9th Cir. 1994).

Because Plaintiffs are institutional providers, as opposed to individual or group practitioners, Section 447.45(d)(4) applies. See Ill. Council on Long Term Care v. Bradley, 957 F.2d 305, 308 (7th Cir. 1992) (holding that the state has 12 months to reimburse institutional providers under Section 447.45(d)(4)).  Under Section 447.45(d)(4), Defendants are in compliance with federal law as long as they reimburse Plaintiffs' claims within 12 months.  Plaintiffs do not allege Defendants have violated the 12 months requirement, and thus have not shown sufficient probability of success on the merits on the federal Medicaid claim.

Further, Plaintiffs have not shown sufficient probability of success on the merits for either the Contracts Clause claim or the claim for Takings Clause claim.  See Univ. of Hawaii Prof'l Assembly v. Cayetano, 183 F.3d 1096 (9th Cir. 1999) (holding that no Contracts Clause violation occurred where the state did not limit the plaintiff's remedies for breach of contract); United Cerebral Palsy Assocs. v. Cuomo, 966 F.2d 743, 746 (2d Cir. 1992) (holding that temporary delay in reimbursing Medicaid claims was not an unconstitutional taking).

Therefore, Plaintiffs have not shown sufficient probability of success on the merits for any claim that would warrant a TRO.

III. Irreparable Harm

Plaintiffs argue that the delay in Medi-Cal reimbursements will cause Duke and Blythe to experience financial hardship. Plaintiffs argue that Duke and Blythe will be unable to pay their

employees, make lease payments, compensate vendors, or pay for
utilities such as water and electricity. (Mot. at 13:1-9.)
Defendants argue that Plaintiffs could avoid irreparable injury by
seeking short-term loans or additional lines of credit. (Opp'n at
5:21-25.) Plaintiffs respond by arguing that taking on additional
debt might forestall imminent financial harms, but Plaintiffs would be
irreparably harmed in the future because the "burden of security and
interest requirements" of the debt would "threaten the facilities'
long-term viability." (Reply at 5:26-28; 6:4.)

Plaintiffs argument fails for two reasons. First, the 2007-
08 California budget was enacted on August 21, 2007. There is no
claim that Defendants will continue to delay Medi-Cal reimbursements
to providers such as Plaintiffs after the passage of the budget.[3]

Second, the relief that Plaintiffs seek -- immediate payment
of money -- is not equitable relief that may be granted in the form of
a TRO. "Irreparable injury" is injury that cannot be compensated with
monetary damages. Sampson v. Murray, 415 U.S. 61, 90-92 (1974).[4]
Plaintiffs have not demonstrated that monetary damages are inadequate.

---

[3]    Plaintiffs admit this is the case in their motion,
conditioning their irreparable harm with the phrase, "If the budget
deadlock is not resolved ..." (Mot. at 12:28 - 13:2).

[4]    "The basis of injunctive relief in the federal courts is
irreparable harm and inadequacy of legal remedies." Los Angeles
Memorial Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202
(9th Cir. 1980). Monetary damages are a legal remedy. Feltner v.
Columbia Television Pictures, Inc., 523 U.S. 340, 352 (1998).

CONCLUSION

For the reasons stated, Plaintiffs have not shown sufficient probability of success on the merits or irreparable harm.  Therefore, Plaintiffs' application for a TRO is DENIED.

IT IS SO ORDERED.

Dated:  August 21, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge